UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| Estrellita Reyes, *on behalf of herself others similarly situated*, | )<br>) |
| Plaintiff, | ) Case No. 1:16-cv-24077-Goodman<br>)<br>) |
| v. | )<br>) |
| BCA Financial Services, Inc., | )<br>) |
| Defendant. | ) |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**Introduction**

The Telephone Consumer Protection Act ("TCPA") prohibits the use of an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice to place calls to a cellular telephone number absent prior express consent. Here, in an attempt to reach someone unknown to Estrellita Vazquez[1] ("Plaintiff"), BCA Financial Services, Inc. ("Defendant") used an ATDS and an artificial or prerecorded voice to place multiple calls to her cellular telephone number. Defendant concedes that it had neither a business relationship with Plaintiff, nor prior express consent to place calls to her cellular telephone number by using an ATDS or an artificial or prerecorded voice. Plaintiff accordingly requests that this Court enter judgment in her favor in the amount of $1,500 for each of Defendant's eight violations of the TCPA.

**Standard**

Explaining the summary judgment standard, this Court wrote:

> The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[1] Ms. Vazquez changed her surname from Reyes subsequent to initiating this action.

judgment as a matter of law." Fed. R. Civ. P. 56(a). When "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citation omitted). If the movant establishes the absence of a genuine issue, then the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

For issues on which the opposing party will have the burden of proof at trial, the movant can prevail by merely pointing out that there is an absence of evidence to support the non-movant's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505. Likewise, a dispute about a material fact is a "genuine" issue only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

\*   \*   \*

Nevertheless, the non-movant cannot defeat summary judgment by: (a) "rest[ing] upon mere allegations or denials," *Woolsey v. Town of Hillsboro Beach*, 541 Fed.Appx. 917, 919 (11th Cir. 2013); (b) "simply *saying* the facts are in dispute," *Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC*, No. 12–22539, 2014 WL 7272974, at \*7 (S.D. Fla. Dec. 18, 2014); or (c) relying on "evidence that is merely colorable or not significantly probative," *Fields v. Gorman*, No. 09–61466, 2010 WL 3769396, at \*3 (S.D. Fla. Sept. 3, 2010). "Rhetoric and attorney argument are no substitute for record evidence." *Latele*, 2014 WL 7272974, at \*7.

To the contrary, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported summary judgment motion. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Indeed, "Rule 56 mandates the entry of summary judgment, upon motion, against a party who fails to make a showing sufficient to establish an element essential to his case on which he bears the burden of proof at trial." *Schechter v. Ga. State Univ.,* 341 Fed.Appx. 560, 562 (11th Cir. 2009) (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548). A mere "scintilla" of evidence in favor of the non-moving

party, or evidence that is merely colorable or not significantly probative is not enough to defeat a properly supported summary judgment motion. *Id.*

*Martins v. Royal Caribbean Cruises Ltd.*, 216 F. Supp. 3d 1347, 1360-61 (S.D. Fla. 2016) (Goodman, J.).

## Argument

I. **Defendant violated the TCPA by using an ATDS and an artificial or prerecorded voice to place six calls to Plaintiff's cellular telephone number absent prior express consent.**

The TCPA reads, in relevant part:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) by using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> \*   \*   \*
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]

47 U.S.C. § 227(b)(1)(A)(iii).

Thus, "[t]here are two elements to an auto-dialer TCPA claim that a plaintiff must [prove]: (1) a call to a cellular telephone; (2) via an automatic telephone dialing system." *Murphy v. DCI Biologicals Orlando, LLC*, No. 6:12-CV-1459-ORL, 2013 WL 6865772, \*4 (M.D. Fla. Dec. 31, 2013), *aff'd*, 797 F. 3d 1302 (11th Cir. 2015); *accord Mohamed v. Am. Motor Co., LLC*, 320 F.R.D. 301, 316 (S.D. Fla. 2017) ("To establish a TCPA violation under § 227(b)(1)(A)(iii), [a] plaintiff[] [must] show that: (1) the defendant[] placed calls; (2) to [her] cellular phone[]; (3) using an automatic dialing system.").

3

While prior express consent is not an element of a TCPA claim, it is an affirmative defense. *See, e.g.*, *Latner v. Mount Sinai Health Sys., Inc*, 879 F.3d 52 (2d Cir. 2018), *as amended* (Jan. 9, 2018) ("Prior express consent is an affirmative defense to liability under the TCPA."); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017) ("Express consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof."); *Blow v. Bijora, Inc.*, 855 F.3d 793, 803 (7th Cir. 2017) ("Express consent is an affirmative defense on which the defendant bears the burden of proof."); *see also Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015) (referring to re issue of prior express consent as an "affirmative defense"); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1115 (11th Cir. 2014) (same).

### A. Defendant placed each of the six calls at issue to Plaintiff's cellular telephone number.

Defendant admits that it placed six calls to (813) 802-XXXX. *See* Statement of Facts at ¶ 13. At all relevant times, (813) 802-XXXX was Plaintiff's personal cellular telephone number. *Id.* at ¶ 14. Defendant did not place any of its calls to Plaintiff's cellular telephone number for emergency purposes. *Id.* at ¶ 10.

### B. Defendant concedes that it placed the calls at issue by using an ATDS.

Defendant concedes that it placed all six of its calls to Plaintiff's cellular telephone number "by using an automatic telephone dialing system, a predictive dialer, or an artificial or prerecorded voice." *Id.* at ¶ 16.

More specifically, the TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The FCC determined in 2003, and reaffirmed in both 2008 and 2015, that a predictive dialer fits the definition of an ATDS. *See In re Rules and*

4

*Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14091-93 (July 3, 2003) ("[T]he Commission finds that a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress."); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 566 (Jan. 4, 2008) ("[W]e affirm that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7974 (July 10, 2015) ("We . . . reiterate that predictive dialers, as previously described by the Commission, satisfy the TCPA's definition of 'autodialer' for the same reason."); *see also Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) ("The FCC further defined 'automatic telephone dialing system' to include predictive dialers."); *McMillion v. Rash Curtis & Assocs.*, No. 16-cv-03396-YGR, 2018 WL 692105, at *4 (N.D. Cal. Feb. 2, 2018) ("predictive dialers fall squarely within the FCC's definition of automatic telephone dialing system") (internal citation and quotation omitted); *Holcombe v. Credit Prot. Ass'n, LP*, 44 F. Supp. 3d 1311, 1315 (M.D. Ga. 2014) (" In 2003, the FCC held that a predictive dialer falls within the statutory definition of an ATDS. . . . In 2008, the FCC reaffirmed that predictive dialers constitute ATDSs within the meaning of the TCPA.").

    The FCC defines a predictive dialer as "equipment that dials numbers and, when certain computer software is attached, also assists . . . in predicting when [an] agent will be available to take calls." 18 FCC Rcd. at 14091; *accord Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638-39 (7th Cir. 2012) ("The machine, called a predictive dialer, works autonomously until a human voice comes on the line. If that happens, an employee in Bill Collector's call center will

5

join the call."). The FCC further explained, in describing a predictive dialer, that "[t]he hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Id*.; *see also Blow v. Bijora, Inc.*, 855 F.3d 793, 802 (7th Cir. 2017) ("The FCC has now long recognized that 'predictive dialers,' which have 'the capacity to *store* or produce numbers and dial those numbers at random, in sequential order, *or from a database of numbers*,' 2003 FCC Order at 14091 (emphasis added), are autodialers under the TCPA.").

Here, Defendant concedes that the Noble dialer—the dialing system it uses to make outbound calls in connection with its debt collection efforts—is a predictive dialer. *See* Statement of Facts at ¶ 19. As a predictive dialer, the Noble dialer is, therefore, an ATDS as defined by the TCPA. *Accord McMillion*, 2018 WL 692105, at *4 ("Accordingly, defendant's Dialers 'fall squarely within the FCC's definition of 'automatic telephone dialing system.'") (quoting *Meyer*, 707 F.3d at 1043); *see also, e.g.*, *In re Collecto, Inc.*, No. 14-MD-02513-RGS, 2016 WL 552459, at *4 (D. Mass. Feb. 10, 2016) (rejecting the defendant's argument that the "Maestro Dialer manufactured by Noble Systems, Inc." is not an ATDS).

Moreover, in addition to being a predictive dialer, Defendant acknowledges that its Noble dialer automatically dials stored telephone numbers, without a human ever asking, directing, or authorizing it to dial a specific number—further buttressing that Defendant made its calls to Plaintiff using an ATDS. *See* Statement of Facts at ¶ 20. Accordingly, there is no dispute that Defendant used an ATDS to place the calls at issue to Plaintiff's cellular telephone number.

### C. Defendant also used an artificial or prerecorded voice in connection with at least two of its calls to Plaintiff's cellular telephone number.

Separately, and during the time period it called Plaintiff, Defendant's Noble dialer also contained a functionality that allowed Defendant to play a prerecorded voice message upon a call

6

recipient answering one of Defendant's calls. *See* Statement of Facts at ¶ 17. To that end, upon a call recipient answering one of Defendant's calls, Defendant automatically played a prerecorded voice message that prompted the call recipient to press a key if they were the person Defendant was looking for, and to press a different key if Defendant called a wrong number. *Id*.

At least two of Defendant's calls to Plaintiff's cellular telephone number were accompanied by such an artificial or prerecorded voice message. *Id*. at ¶ 18. In response to one of those calls, Plaintiff pressed the button corresponding to "wrong number," resulting in a wrong number notation in Defendant's computer system. *Id*. at ¶ 21.

### II. Defendant did not have Plaintiff's prior express consent to use an ATDS to place calls to her cellular telephone number.

While prior express consent "is not an element of [a] TCPA claim," *Connelly v. Hilton Grant Vacations Co., LLC*, No. 12CV599 JLS KSC, 2012 WL 2129364, at *3 (S.D. Cal. June 11, 2012), in some instances, "[p]rior express consent is an affirmative defense to a claim under the TCPA." *Buslepp v. B & B Entm't, LLC*, No. 12–60089–CIV, 2012 WL 4761509, at *4 (S.D. Fla. Oct. 5, 2012).

Notwithstanding, Defendant concedes that Plaintiff did not provide, and Defendant did not have, prior express consent to place calls to Plaintiff's cellular telephone number by using an ATDS or an artificial or prerecorded voice. *See* Statement of Facts at ¶¶ 5-9. To that end, Defendant withdrew its affirmative defense of prior express consent. *Id.* at ¶ 7.

But even if Defendant asserted a prior express consent defense—it does not—with respect to calls to wrong numbers like those to Plaintiff here, prior express consent is not an available protection. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014) (explaining that only the current subscriber to a cellular telephone number can provide valid consent to receive calls made by an ATDS); *Soppet*, 679 F.3d at 641 (stating that "[c]onsent to call a given number

7

must come from its current subscriber"); *see also In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 2015 WL 4387780 (F.C.C. July 10, 2015) (clarifying that the "called party" who must provide prior express consent "is the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan").

### III. Defendant knowingly and willfully violated the TCPA, and is correspondingly liable to Plaintiff in the amount of $1,500 for each of its eight violations of the TCPA.

A TCPA plaintiff may bring "an action to recover for actual monetary loss from [a violation of the TCPA], or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B). A defendant is therefore liable for no less than $500 in damages for each of its violations of the TCPA. *See Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1167 (S.D. Ind. 1997) ("§ 227(b)(3)(B) . . . provides for a minimum penalty of [$] 500 for each violation of the TCPA"); *see also Soppet*, 679 F.3d at 639 ("§ 227(b)(3) . . . authorizes an award of actual damages, or $500 per violation, whichever is greater"); *accord Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1105 (11th Cir. 2015) ("In plain terms, the statute allows a person to recover '$500 in damages for each' 'violation of this subsection.' Section 227(b)(1) has no language limiting the recovery to $500 per 'call' or 'fax.'") (internal citations omitted).

Here, Defendant committed eight violations of the TCPA, stemming from its six calls to Plaintiff's cellular telephone number. First, it violated the TCPA by using an ATDS to place six calls to Plaintiff's cellular telephone number without prior express consent. Second, it separately violated the TCPA by using an artificial or prerecorded voice during at least two of the calls to Plaintiff's cellular telephone number. Statement of Facts at ¶ 18 (noting that Defendant played a prerecorded voice message during its July 22, 2016 and August 5, 2016 calls to Plaintiff); *see*

8

*Burns v. Halsted Fin. Services, LLC*, No. 1:15-cv-4287-LMM-JKL, 2016 WL 5417218, at *5 (N.D. Ga. Sept. 14, 2016) ("Although Plaintiff complains that he received two telephone calls from Defendant, he has identified four distinct violations of the TCPA—two for each call. In particular, each call used an automatic telephone dialing system and used an artificial or prerecorded message. At $500 per violation, Plaintiff is entitled to a total award of $2,000 in statutory damages under the TCPA.") (citing *Lary*, 780 F.3d at 1106 ("recognizing that one call can trigger multiple violations of the TCPA")).

The TCPA additionally permits a court to treble the mandatory $500 per-violation award "[i]f the court finds that the defendant willfully or knowingly violated" the TCPA. 47 U.S.C. § 227(b)(3)(C); *see also Soppet*, 679 F.3d at 639 (explaining that the $500 per violation awards are "trebled for willful violations"); *Burns*, 2016 WL 5417218, at *5 (trebling damages award for four TCPA violations stemming from two calls).

Although the TCPA does not define "willfully," the Communications Act—of which the TCPA is a part—does. It states that "the term willful . . . means the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this chapter." 47 U.S.C. § 312. Of course, "[i]dentical words used in different parts of the same act are intended to have the same meaning." *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990). So it follows that a court may treble the TCPA's mandatory $500 per-violation award where a defendant consciously and deliberately places the autodialed calls at issue, even if the defendant does not specifically intend to violate the TCPA.

Through its opinion in *Smith v. Wade*, the Supreme Court made clear that "'willfulness' d[oes] not mean intent to cause injury, but only voluntary action":

> Willful . . . generally, as used in courts of law, implies nothing blamable,
> but merely that the person of whose action or default the expression is used

> is a free agent, and that what has been done arises from the spontaneous action of his will. It amounts to nothing more than this: that he knows what he is doing, and intends to do what he is doing, and is a free agent. And willfully does not imply that an act done in that spirit was necessarily a malicious act[.]

461 U.S. 30, 41 n.8 (1983) (citation omitted).

It is also in line with the FCC's interpretation—that "[w]illful . . . means that the violator knew that he was doing the act in question . . . . A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance." *In re Dynasty Mortg., LLC*, 22 F.C.C. Rcd. 9453, 9470 n.86 (May 14, 2007).

Moreover, a close look at the term "knowing" mandates the same conclusion—that a court may treble the TCPA's $500 per-violation award even if a defendant does not know that its conduct violates the TCPA. Stating as much, the Eleventh Circuit explained that "the intent for treble damages [under the TCPA] does not require any malicious or wanton conduct, but rather is satisfied by merely 'knowing' conduct." *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir.), *cert. denied*, 132 S. Ct. 553 (2011); *accord Sengenberger v. Credit Control Servs., Inc.*, No. 09C2796, 2010 WL 1791270, at *6 (N.D. Ill. May 5, 2010) (holding that the defendants "knowingly and willfully made the phone calls," based upon nothing more than a finding that they "intentionally made the contested phone calls to Plaintiff"), *adhered to on reconsideration*, 2010 WL 6373008 (N.D. Ill. June 17, 2010).

As well, the District of Kansas recently held that a willful or knowing violation of the TCPA occurs simply where the defendant's action is intentional:

> This Court chooses to follow the direction of the FCC and those courts who have found that the plaintiff need not prove that the defendant had knowledge of the TCPA's provisions to establish a knowing or willful violation. Rather, the Court finds that "to establish a *knowing* violation of the TCPA for an award of treble damages, a plaintiff must prove only that the defendant knew that it acted or failed to act in a manner that violated the

10

>statute, not that the defendant knew that the conduct itself constituted a violation of the law."

*Lee v. Loandepot.com, LLC*, No. 14-CV-01084-EFM, 2016 WL 4382786, at *8 (D. Kan. Aug. 17, 2016); *accord Charvat v. Ryan*, 2007-Ohio-6833, 116 Ohio St. 3d 394, 399 (2007) ("[T]o establish a knowing violation of the TCPA for an award of treble damages, a plaintiff must prove only that the defendant knew that it acted or failed to act in a manner that violated the statute, not that the defendant knew that the conduct itself constituted a violation of law.").

Here, there is no dispute that Defendant knew that the TCPA prohibited the very type of calls it placed to Plaintiff's cellular telephone number. *See* Statement of Facts at ¶¶ 22-24. In fact, Defendant's TCPA Participant Guide, which is makes available to all of its employees, states as much:

>The Telephone Consumer Protection Act, otherwise referred to as the TCPA has significant impact upon businesses who initiate communication using the telephone.
>
>This guide is intended as a comprehensive training guide for employees.
>
>\*   \*   \*
>
>All employees of the organization are required to comply with this act, regardless of job description or department assigned.

Statement of Facts at ¶ 22, Ex. H at 3; *see also* Ex. H at 4 ("The Telephone Consumer Protection Act (TCPA) was enacted in 1991 primarily to curtail certain activities of telemarketers. Over time the Act has been amended, incorporating the activities of debt collectors, especially with regard to calling wireless numbers. . . . As we go through this training module it is vitally important that you understand that the TCPA has wide reaching governance over telephone communications, not just governance over collection activities. The Act governs all who initiate calls to a wireless number using computer assisted technology.").

And despite being fully aware of the TCPA's importance and requirements, the reckless manner in which Defendant deliberately placed calls to Plaintiff's cellular telephone number is underscored by the fact that at no point before placing calls to Plaintiff's cellular telephone number did Defendant do anything to confirm that Plaintiff's cellular telephone number belonged to the intended recipient of its calls. Statement of Facts at ¶¶ 3, 11-12. Indeed, Defendant never does anything to confirm that telephone numbers it receives from its clients belong to the intended recipients of Defendant's calls before using the Noble dialer to place calls to them. *See id.* at ¶¶ 11-12.[2] Accordingly, Defendant knowingly and willfully violated the TCPA.

## Conclusion

The TCPA prohibits the use of an ATDS or an artificial or prerecorded voice to place calls to cellular telephone numbers absent prior express consent. Here, lacking such consent, Defendant used an ATDS to place six calls to Plaintiff's cellular telephone number, and to deliver two prerecorded voice messages. Plaintiff accordingly requests that this Court grant summary judgment in her favor, and award her $1,500 for each of Defendant's eight violations of the TCPA.

---

[2] Of note, the Seventh Circuit included in its opinion in *Soppet* suggestions for avoiding TCPA violations when using a predictive dialer: "Bill collectors need not abandon predictive dialers. Other options remain: • Have a person make the first call (§ 227(b)(1) is limited to automated calls), then switch to a predictive dialer after verifying that Cell Number still is assigned to Customer. • Use a reverse lookup to identify the current subscriber to Cell Number. • Ask Creditor, who obtained Customer's consent, whether Customer still is associated with Cell Number—and get an indemnity from Creditor in case a mistake has been made." 679 F.3d at 642. Defendant, however, did not implement any of these suggestions, choosing instead to repeatedly autodial Plaintiff without regard to whether it was calling the correct telephone number.

February 9, 2018                    */s/ Aaron D. Radbil*
                                                Aaron D. Radbil
                                                Greenwald Davidson Radbil PLLC
                                                106 East Sixth Street, Suite 913
                                                Austin, Texas 78701
                                                Tel: (512) 322-3912
                                                Fax: (561) 961-5684
                                                aradbil@gdrlawfirm.com

                                                Michael L. Greenwald
                                                James L. Davidson
                                                Jesse S. Johnson
                                                Greenwald Davidson Radbil PLLC
                                                5550 Glades Road, Suite 500
                                                Boca Raton, Florida 33431
                                                Tel: (561) 826-5477
                                                Fax: (561) 961-5684
                                                mgreenwald@gdrlawfirm.com
                                                jdavidson@gdrlawfirm.com
                                                jjohnson@gdrlawfirm.com

                                                *Counsel for Plaintiff and the proposed class*


## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically on February 9, 2018, via the Court Clerk's CM/ECF system, which will provide notice to all counsel of record.

                                                */s/ Aaron D. Radbil*
                                                Aaron D. Radbil