# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO. 16-24077-CIV-GOODMAN
### [CONSENT CASE]

ESTRELLITA REYES,

     Plaintiff,

v.

BCA FINANCIAL SERVICES, INC.,

     Defendant.

_____/

## ORDER DENYING MOTION FOR RECONSIDERATION

Plaintiff Estrellita Reyes,[1] individually and on behalf of others similarly situated, sued Defendant BCA Financial Services, Inc. for allegedly violating the Telephone Consumer Protection Act (the "TCPA"). The TCPA prohibits, among other things, the use of an "automatic telephone dialing system" ("ATDS") or an artificial or prerecorded voice to call a person's cellphone absent an emergency or prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii).

The Court certified Reyes's proposed class under Federal Rule of Civil Procedure 23. *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV, 2018 WL 3145807 (S.D. Fla. June 26, 2018). BCA moves the Court to reconsider its ruling on the class certification motion.

---

[1]     Plaintiff changed her surname from Reyes to Vazquez after she filed the lawsuit.

[ECF No. 139]. Reyes filed an opposition response, and BCA filed a reply. [ECF Nos. 144; 148]. As outlined below, the Court **denies** the motion for reconsideration for several reasons.

To begin, the Court will not reconsider rulings on issues already resolved in the class certification motion unless BCA shows that there is a "(1) manifest error of fact; (2) manifest error of law; or (3) newly discovered evidence." *In re Daughtrey*, 896 F.3d 1255, 1280 (11th Cir. 2018). Most of BCA's reconsideration motion is premised on issues that the Court has already addressed in its class certification motion. Those issues include: (1) that no adequate plan was proposed for ascertaining the identity of potential class members; (2) that BCA's records cannot query when "B" or "WN" codes and flags were attached to a telephone number; (3) that the methodology used by Reyes's class-administration expert is fatally flawed; and (4) that the proposed method for ascertaining potential class members' identities, and, in particular, the use of self-identifying affidavits, cannot be squared with *Karhu v. Vital Pharmaceuticals, Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015).

BCA has not established that the Court committed manifest errors of fact or law when resolving those issues in Reyes's favor. Nor does BCA present any newly discovered evidence relevant to those issues. Instead, BCA simply raises the same arguments on these issues and concludes that the Court got it wrong in the first place. A motion for reconsideration, however, "is not a vehicle to re-argue issues resolved by the

court's decision[.]" *In re Daughtrey*, 896 F.3d 1255, 1280; *see also Underwood v. Lampert*, No. 02-21154-CIV, 2005 WL 8155004, at *1 (S.D. Fla. Nov. 1, 2005) ("In order to demonstrate clear error, the party must do more than simply restate its previous arguments[.]").

Accordingly, the Court **denies** the reconsideration motion as to those already-resolved issues that BCA improperly reargues on reconsideration. The Court sees no reason to repeat the prior rulings on those issues in this order, so nothing else will be discussed now on those issues.

Next, the Court rejects, on both procedural and substantive grounds, BCA's argument that the Court violated the prohibition against "one-way intervention" by certifying a TCPA class *after* it granted summary judgment on Reyes's individual claim. In her opposition response to the reconsideration motion, Reyes argues that BCA has waived the one-way intervention doctrine argument because, among other reasons,[2] BCA never raised the issue before, despite multiple chances to do so. [ECF No. 144]. Reyes also disagrees with the merits of BCA's argument, positing that, according to

---

[2]    Reyes's first waiver argument was that BCA's request that the Court enter summary judgment in its favor (in a supplemental memorandum in opposition to Reyes's summary judgment motion) resulted in a waiver because it was the same as BCA having filed an actual summary judgment motion. But the Court rejected this theory at the hearing on the reconsideration motion, explaining that it would not deem BCA's two-sentence, "throwaway" summary judgment request to be a *de facto* summary judgment motion. [ECF No. 161, p. 14].

Eleventh Circuit precedent and other authorities, the Court has the discretion to rule on summary judgment *before* class certification. *Id.*

Because BCA had indeed never raised the one-way intervention doctrine issue previously, the Court required BCA to file a reply limited to that waiver issue. [ECF No. 146]. BCA did so. [ECF No. 148]. In that reply, BCA takes the position that it did not raise the one-way intervention doctrine previously because it assumed "that the Court knows the law," and, therefore, BCA "was not required to advise the Court not to take certain actions." [ECF No. 148, p. 4]. BCA also says that it "assume[d] the Court intended to *deny* class certification once it ruled favorably on [Reyes's summary judgment motion]." [ECF No. 148, p. 4].

At the hearing on the reconsideration motion, BCA articulated its "assumption" argument as follows: "we all operate under the assumption [that] the court is the court and the court knows what the law is and this is not some sort of obscure legal principle that has suddenly popped its head up in this case." [ECF No. 161, p. 15]. But BCA also conceded at the hearing that it could have "easily simply flagged that issue" previously and that the doctrine was not a "hard-and-fast rule." [ECF No. 161, p. 17]. Substantively, BCA disagrees that the Court had the discretion to rule on summary judgment first. [ECF No. 48, pp. 1–3].

The Court finds that BCA has waived its one-way intervention doctrine argument because it was raised too late. Just like a movant cannot on reconsideration reargue already-resolved issues, a movant cannot on reconsideration "make additional argument on matters not previously raised by counsel." *In re Daughtrey*, 896 F.3d at 1280; *see also Underwood*, 2005 WL 8155004, at *1 (adding that on reconsideration, "any arguments the party failed to raise in the earlier motion will be deemed waived"). And yet BCA improperly raised the one-way intervention doctrine for the first time in its motion for reconsideration of the class certification order, despite multiple earlier opportunities to highlight that argument.

Specifically, Reyes moved to certify her class in November 2017. [ECF No. 59]. Reyes then moved for summary judgment on her individual claim in February 2018. [ECF No. 86]. BCA filed its opposition response to the summary judgment motion later that month. [ECF No. 92]. And then in April 2018 -- approximately five months after Reyes moved for class certification -- BCA filed a supplemental memorandum in opposition to Reyes's summary judgment motion (to address the recent D.C. Circuit decision in *ACA International v. FCC*). [ECF No. 119]. And yet at neither of those points did BCA raise any concern over the one-way intervention doctrine (or seek leave to raise that argument). [ECF No. 59].

BCA also failed to raise the one-way intervention doctrine in the intervening weeks between the Court's order granting summary judgment in Reyes's favor on her

individual claim (May 14, 2018) and its later order granting class certification (June 26, 2018). [ECF Nos. 124; 134]. And this omission occurred even though BCA also moved for reconsideration of the summary judgment ruling. [ECF No. 125].[3] But, again, BCA did not mention in any way (directly or indirectly, expressly or implicitly) the one-way intervention doctrine. Indeed, BCA did not file anything before the class certification order was issued to alert the Court that the summary judgment order supposedly required a summary denial of the class certification motion. It was only after the Court ruled against BCA on summary judgment *and* class certification that BCA advanced for the first time its one-way intervention argument. [ECF No. 139].

Moreover, the Court does not endorse BCA's "the Court knows best" excuse here for not having timely raised the one-way intervention doctrine issue. If any party could escape the consequences of not articulating an argument under the assumption that "the law is the law and the Court knows the law," then the legal concept of waiver would be a nullity. Indeed, under BCA's "the Court knows the law" philosophy, a party would never need to even submit a memorandum of law to support a motion because, after all, the judge would already know the law.

It is not the Court's job to advance arguments on behalf of the parties. Accordingly, when a party waits until reconsideration to raise a new argument, the argument is considered waived. *See, e.g., Townhouses of Highland Beach Condo. Ass'n, Inc.*

---

[3] The Court denied that reconsideration motion in a paperless order because BCA simply rehashed old arguments -- as it does here to a large extent. [ECF No. 128].

*v. QBE Ins. Corp.*, 504 F. Supp. 2d 1307, 1312 (S.D. Fla. 2007) (finding that an argument raised for the first time on reconsideration was waived).

The Court also rejects BCA's assertion that it "immediately moved to protect its position" by raising the one-way intervention doctrine in its motion for reconsideration of the class certification motion. [ECF No. 148, p. 4]. In support of that assertion, BCA cites to *Taha v. City of Bucks*, 862 F.3d 292, 298 (3d Cir. 2017) for the proposition that the one-way intervention doctrine can be waived only when a party did not take advantage of multiple opportunities to raise the doctrine previously. [ECF No. 148, p. 4]. But that is precisely what happened in this case. In *Taha*, the appellate court held that the defendants waived the one-way intervention doctrine when, among other things, after the district court ruled on cross-motions for summary judgment,[4] the defendants moved for reconsideration but did not argue one-way intervention or object to the order of the court's decision-making. 862 F.3d at 299–99. Likewise here, BCA moved for reconsideration after the Court granted Reyes's summary judgment motion, but before the Court had ruled on class certification, and yet BCA did not mention the one-way intervention doctrine at that time. Nor did BCA object to this Court's order of decision-making after the summary judgment order but before the class certification order.

---

[4]     Although the Court has already found that BCA did not technically file an actual motion for summary judgment, the rationale in *Taha* still applies with equal force under the facts of this case.

Another example of how BCA could have raised the issue sooner is found in *Alhassid v. Bank of America, N.A.*, No. 14-CIV-20484, 2015 WL 11216721 (S.D. Fla. Sept. 14, 2015). In that case, similar to this one, the plaintiffs first filed a motion to certify a class of potential members (involving claims against a mortgage company for having imposed improper fees in connection with mortgage loans). *Id.* at *1. The plaintiffs then filed a summary judgment motion. *Id.* In response, the defendant filed a motion to strike the summary judgment motion because it "violated the rule against one-way intervention by seeking adjudication on the merits of certain of Plaintiffs' claims prior to a decision on class certification." *Id.* Although the district court ultimately denied the motion to strike as the "wrong vehicle" for the defendant's request, the motion prompted the district court to conclude that "economy and fairness issues favored delayed consideration" of the summary judgment motion. *Id.* As a result, the district court stayed the summary judgment motion until after it disposed of the class certification motion. *Id.*

The point is, BCA could have (like the defendant in *Alhassid*) raised the one-way intervention issue earlier and in myriad ways -- for example, as this Court noted at the hearing, by simply filing "a one-page supplemental brief." [ECF No. 161, p. 97]. But BCA chose not to do that. Instead, it waited until after the Court ruled against it on class certification. Consequently, BCA waived its one-way intervention doctrine argument. *See Alig v. Quicken Loans Inc.*, No. 5:12-CV-114, 2016 WL 10490288, at *7 (N.D.W. Va.

Aug. 25, 2016) (rejecting defendants' objection to class certification based on one-way intervention when defendants chose to "lay in wait, hoping for a simultaneous decision on the motions or a decision that ruled upon the motion for summary judgment first").

Notwithstanding BCA's waiver and concerning the merits of the argument, the Court also finds that BCA's one-way intervention doctrine argument is not convincing. The Eleventh Circuit has held that "it is 'within the court's *discretion* to consider the merits of the claims before their amenability to class certification.'" *Kehoe v. Fid. Fed. Bank & Tr.*, 421 F.3d 1209, 1211 (11th Cir. 2005) (quoting *Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1343 (11th Cir. 2000)) (emphasis added). To be sure, as BCA points out, *Kehoe* involved a defense summary judgment motion, as opposed to a summary judgment motion filed by a plaintiff. [ECF No. 148, p. 2]. But as Reyes points out, several other appellate and trial court decisions throughout the country have endorsed circumstances where a trial court granted a plaintiff's summary judgment motion on the merits and then entered an order granting class certification. [*See* ECF No. 154 (collecting cases)].

For instance, in *Dickens v. GC Services Limited Partnership*, 706 F. App'x 529 (11th Cir. 2017), the Eleventh Circuit reversed a district court that granted the plaintiff's summary judgment motion as to the defendant's liability but then denied the class certification motion. On remand, the district court granted the class certification motion. *Dickens v. GC Servs. Ltd. P'ship*, No. 8:16-CV-803-T-30TGW, 2018 WL 4732478 (M.D. Fla.

Oct. 2, 2018). Although the Eleventh Circuit did not mention the one-way intervention doctrine, the appellate court was certainly aware of the procedural posture. So if BCA's "assumption" argument is to be credited, then the Eleventh Circuit would have presumably "known" to *sua sponte* affirm the denial of class certification. Tellingly, it did the opposite.

Moreover, as a threshold matter, the Court's summary judgment ruling does not raise a one-way intervention problem in the first place. "'One-way intervention' occurs when the potential members of a class action are allowed to 'await . . . *final judgment on the merits* in order to determine whether participation [in the class] would be favorable to their interests.'" *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1252 (11th Cir. 2003) (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974)) (emphasis added). The Court has not granted a final judgment on the merits in this case. At most, the Court's ruling on whether the Noble predictive dialer is an ATDS *may* have class-wide implication. Then again, maybe the ruling will not have that effect. The Court does not know what the evidence at trial will show. And other issues remain for consideration, including BCA's consent defense, which BCA dropped as to Reyes but not as to the rest of the class. [ECF No. 74, p. 1].

To continue, the Court also **denies** the motion for reconsideration as to BCA's Seventh Amendment argument. BCA argues that it has a Seventh Amendment right to have a jury adjudge its consent defense, including any potential third-party consent and

agency issues. [ECF No. 139, p. 10]. In the memorandum BCA filed after the reconsideration motion hearing, BCA elaborated on this argument by relying on *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

In a matter of first impression, *Osorio* interpreted the term "called party" within the TCPA to include only the phone subscriber and not an "intended recipient." *Id.* at 1250–53.[5] As a result, the appellate court rejected defendant State Farm's argument that the intended recipient of its calls (a woman named Betancourt, who had given the phone number to State Farm when she applied for car insurance) could consent to calls made to a man named Osorio, who was the actual subscriber. *Id.* But the Eleventh Circuit also held that consent had to be established under Florida common law principles and "[o]ne way for State Farm to do so would be by demonstrating that Betancourt had an agency relationship with Osorio that permitted her to consent to Osorio receiving the calls, and by showing that she exercised that authority in this case[.]" *Id.* at 1253. The appellate court went on to reverse the district court's summary judgment order (which was in State Farm's favor on the consent issue) because genuine issues of material fact remained regarding the agency relationship between Betancourt and Osorio -- for instance, there was evidence that they lived together, had a child, and shared a cellphone plan. *Id.* at 1246, 53–54.

---

[5]    The key TCPA provision applicable in *Osorio*, 47 U.S.C. § 227(b)(1), provides, in pertinent part, that a person may not "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice."

BCA submits that it too has a right to have the jury determine agency and third-party consent issues. BCA elaborates that potential class members will fall into five groups: (1) patients whose phone number was reassigned; (2) patients who gave the wrong number, perhaps on purpose; (3) parents of a minor patient who gave their phone numbers instead of their child's; (4) friends or family of a patient who gave their numbers instead of the patients'; and (5) patients who gave their friend's or family member's numbers. [ECF No. 164, p. 10]. BCA submits that persons in groups 1 and 2 may have a valid TCPA.[6] *Id.* But BCA contends that persons in groups 3, 4, and 5 are *Osorio*-like and, therefore, "BCA would have the right to conduct discovery on the relationship between the intended recipient and the plaintiff and also[] have a jury determine the 'agency' issue the Eleventh Circuit alluded to in *Osorio*." [ECF No. 164, pp. 10–11].[7]

---

[6]     Although BCA says that it could bring a third-party claim against persons in group 2, BCA does not explain how that affects class certification. Accordingly, this is not a basis to reconsider the certification ruling.

[7]     In a short paragraph, BCA also submits that potential class members are not entitled to a presumption that they received "wrong party calls." [ECF No. 139, p. 11]. In support of that argument, BCA presents some authorities that stand for the general proposition that class actions do not alter a plaintiff's burden of proof on each element of his or her claim. *Id.* BCA then says: "Maybe this Court has in mind some plan to deal with these sorts of issue[s;] however the Order contains nothing indicating the details of any such plan." *Id.*

The Court is unclear about the point BCA is trying to advance here. Perhaps BCA is referring to Reyes's rebuttal to BCA's consent defense, i.e., that no class member could give consent to be called because all class members are, by definition, unintended

But BCA fails to appreciate an important reason why the Court determined that its consent defense does not preclude class certification: "BCA provides nothing but bare assertions of its consent defense." *Reyes*, 2018 WL 3145807, at *16. In the class certification motion, the Court collected several cases which show that "unadorned consent defenses will not defeat class certification." *Id.* at *15. The Court then cited cases which showed that, "[b]y contrast, in many of the cases that have refused to certify TCPA classes because of individualized issues of consent, the defendant actually showed proof of consent and that consent could have been obtained in many different ways." *Id.* at *16.

After comparing those two categories of cases with the facts in this case, the Court found that BCA's consent defense fell into the former category of cases -- those which do *not* defeat class certification. *Id.* at *16. To show this most clearly, the Court highlighted an answer from BCA to an interrogatory from Reyes that asked the following: "For the 301,058 cellular telephone numbers to which Defendant placed calls from April 2016 to September 2016 by using the computer assisted dialing technology manufactured/designed by Noble identify the cellular telephone numbers for which it

_____

recipients of BCA's calls. To be clear, the burden of proof on the consent *defense* falls on *BCA*, not Reyes. But in any event, the Court has not adopted any presumption on either side of the issue -- and has no plans on doing so. The Court, moreover, is unaware of any requirement that it must detail how it will deal with "these sorts of issues" before granting a class certification motion, and BCA does not cite to any authorities requiring that type of micro-managing ruling at this point.

maintains documented prior express consent of the called party." *Id.* (internal quotations omitted). BCA answered:

> *Without a file-by-file review and individual inquiry* into each of the several hundred thousand files at an exorbitant expense of time and monetary resources, Defendant maintains that *all the calls to cellular telephone numbers during that time were made with the prior express consent of the called party.*

*Id.*

BCA's answer is telling and is fatal to its position. It suggests that BCA could have conducted the type of individualized discovery into consent issues that it says it wants, including discovery into agency and third-party consent circumstances. But it chose not to do that to save money. Notably, BCA has not presented *one* example of third-party consent here. So, just like it did in its opposition response, BCA still presents nothing more than bald assertions that its consent defense precludes class certification.

It is also worth emphasizing here that BCA has consistently taken the position that it may establish consent without resorting to individualized inquiries. In its opposition response to the class certification motion, BCA argued that "[t]he persons whom BCA attempted to reach through the subject calls presumptively gave their consent by providing their telephone numbers to the creditor." [ECF No. 82, p. 17 (emphasis added)]. Given that BCA maintains that it "only dials telephone numbers provided by patients" to its healthcare companies [ECF No. 82, p. 3], then, at trial, BCA will likely argue that it had consent to call all such patients. BCA, therefore, has not shown that there are, in fact, different "groups" of consenting persons. Rather, it has

taken the position that even "[w]ithout a file-by-file review and individual inquiry," it had consent to call all potential class members. [ECF No. 112-2, p. 3].

In short, BCA has failed to convince the Court that, under the facts of *this case*, its consent defense precludes class certification. As explained in *Manno v. Healthcare Revenue Recovery Group*, LLC, 289 F.R.D. 674 (S.D. Fla. 2013): "the issue of consent under the TCPA may, or may not, be individualized and it may, or may not, defeat certification, depending on the facts of the particular case." *Id.* at 687. And in this case, the consent defense will likely rise and fall based on common proof. *See id.* (certifying TCPA class and reasoning that because all potential class members went through the same admissions process, during which phone numbers were provided, "the class will prevail or lose together both on their claims and on [the] defense of consent.").

Finally, the Court rejects BCA's argument that HIPAA and Fla. Stat., § 456.057 precludes Reyes's proposed procedure for identifying potential class members. BCA says that although "the Court previously entered a protective order limiting the disclosure of PHI [protected health information] to attorneys and experts," Reyes's expert "proposes to expose PHI to various third parties" to identify those called phone numbers that were assigned to cellular services and to identify their subscribers. [ECF No. 139, p. 20]. The stipulated protective order that the parties *agreed* to in this case, however, specifically provides that

> [t]he parties and their attorneys shall be permitted to use or disclose the confidential information for purposes of prosecuting or defending this

action, including any appeals of this case. This includes, but is not necessarily limited to, *identification of potential class members* and disclosure to attorneys, *experts*, consultants, court personnel, court reporters, copy services, trial consultants, and *other entities or persons involved in the litigation process*.

[ECF No. 33, p. 3 (emphasis added)].

The Court views Reyes's expert's use of third party databases to identify potential class members as being an extension of the expert's work, in the same manner that the use of a copy service would be an extension of an attorney's work. At the very least, the entities that run those database services would fall within the "other entities or persons involved in the litigation process" category. Indeed, it seems nonsensical that Reyes would have agreed to a protective order that would limit her ability to identify class members. Moreover, it is noteworthy that BCA did not cite to any case in its reconsideration motion that precluded class certification on the basis of HIPAA and or § 456.057.

One final note: the parties last mediated this case in September 2017, more than a year ago. A lot has happened since then, including the Court granting Reyes's partial summary judgment motion and her motion for class certification. The parties may benefit from another mediation at this time.

Therefore, by no later than December 3, 2018, the parties shall participate in a global mediation of this case. By October 24, 2018, the parties shall file a notice of mediation, identifying the mediator and the mediation date. The mediator selected

must have experience mediating class actions. Moreover, no later than two days after the mediation, the parties shall file a notice indicating whether the mediation was successful or unsuccessful.

      **DONE and ORDERED** in Chambers in Miami, Florida, on October 15, 2018.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>**Copies furnished to**</u>:
All counsel of record