UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:16-cv-24077-Civ (Goodman)

ESTRELLITA REYES, *on behalf of*
*Herself and others similarly situated,*

        Plaintiff,
vs.

BCA FINANCIAL SERVICES, INC.,

        Defendant.
_____/

## DEFENDANT'S MOTION TO STAY PROCEEDINGS

Defendant BCA Financial Services, Inc. ("BCA") respectfully requests that this Court temporarily stay these proceedings. The Federal Communications Commission will soon issue its position on the key question in this case—what counts as an "automatic telephone dialing system" under the Telephone Consumer Protection Act ("TCPA"). And the Supreme Court will soon decide what degree of deference the Commission's decision should receive in private litigation like this case. To conserve the Court's and the parties' resources, the Court should stay proceedings until the Commission and the Supreme Court have spoken.

## BACKGROUND

The Telephone Consumer Protection Act of 1991 generally makes it unlawful to "make any call (other than a call . . . made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The statute defines an "automatic telephone dialing system" or "ATDS" as "equipment which has the capacity—(A) to store or produce telephone

numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1).

The TCPA authorizes the Federal Communications Commission to "prescribe regulations to implement the requirements" of this portion of the TCPA. § 227(b)(2). Shortly after the TCPA's passage, the Commission read the TCPA to mean what it said: to qualify as an ATDS, equipment must be capable of generating and dialing random or sequential numbers; the statute does not apply to calls "directed to [a] specifically programmed contact number[]" rather than "to randomly or sequentially generated numbers." FCC, *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12400 (1995). But in the years that followed, the Commission began to suggest that the statute also covers equipment that merely dials from a list. In its *2015 Declaratory Ruling*, it put forward both of these conflicting positions: it "indicate[d] in certain places that a device must be able to generate and dial random or sequential numbers to meet the TCPA's definition of an auto-dialer," but it "also suggest[ed]" that "equipment can meet the statutory definition even if it lacks that capacity." *ACA Int'l v. FCC*, 885 F.3d 687, 702 (D.C. Cir. 2018) (hereinafter "*ACA International*") (discussing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7972–73 (2015)).

After *ACA International,* the Commission sought public input on capacity. *See* FCC, *Consumer & Governmental Affairs Bureau Seeks Comment on Interpretation of the Telephone Consumer Protection Act in Light of the D.C. Circuit's* ACA International *Decision*, 83 Fed. Reg. 26284 (June 6, 2018). The Commission sought further comment on this question after the Ninth Circuit's decision in *Marks v. Crunch San Diego, LLC*, which held that, while the TCPA's ATDS provision is "ambiguous on its face," it is best construed to cover equipment "with the capacity to dial stored numbers automatically," whether or not those numbers were randomly or sequentially

2

generated. 904 F.3d 1041, 1051, 1052 (9th Cir. 2018); *see* FCC, *Consumer & Governmental Affairs Bureau Seeks Further Comment on Interpretation of the Telephone Consumer Protection Act in Light of the Ninth Circuit's* Marks v. Crunch San Diego, LLC *Decision*, 2018 WL 4801356 (Oct. 3, 2018). The period for commenting closed on October 24, 2018, and a decision from the Commission is expected soon.

After *ACA International* was decided, this Court determined that the D.C. Circuit's opinion vacated the 2015 Declaratory Ruling but left intact the FCC's 2003 and 2008 Rulings. It was on the bases of those earlier rulings that this Court determined the Noble dialer at issue in this case was an ATDS. *See,* DE 124 at pp. 11 – 29. If the FCC ultimately determines the 2003 and 2008 Declaratory Rulings are no longer valid—either explicitly or implicitly—in its upcoming decision, this Court will be compelled to revisit and almost certainly vacate its earlier ruling finding the Noble telephone system is an ATDS. Simply stated, the only evidence is that the Noble telephone system does not meet the specific statutory definition of an ATDS. Without the "human intervention" element created by the 2003 Declaratory Ruling and reiterated in the 2008 Declaration Ruling, that statutory language will control the determination of whether the Noble system is an ATDS.

Given the recent comments by FCC Commissioner Michael O'Rielly, it is fair to say it is more likely than not that the Commission will decide a telephone system is an ATDS *only* if it meets the statutory definition and, in the process, find the 2003 and 2008 Declaratory Rulings on this issue are null and void. Specifically, Commissioner O'Reilly has stated post-*ACA International* that "interpretations by both federal circuit and district courts [have] illogically found the FCC's 2003 and 2008 orders defining an ATDS to be controlling post-ACA." *See* **Exhibit 1** at p. 2.

Everyone agrees that the Commission's formal interpretation of the TCPA usually deserves deference in litigation between private parties, but there is a question as to how much. The Administrative Orders Review Act (better known as the "Hobbs Act") provides that courts of appeals "ha[ve] exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47," which includes declaratory rulings interpreting the TCPA. 28 U.S.C. § 2342(1); *see* 47 U.S.C. § 402(a). In *Mais v. Gulf Coast Collection Bureau, Inc.*, the Eleventh Circuit held that the Hobbs Act strips district courts of jurisdiction to consider the validity of an order of the Commission, even where that question arises solely as a defense to the plaintiff's claims. 768 F.3d 1110, 1120–21 (11th Cir. 2014). In other words, even if the Commission's interpretation facially exceeds its statutory authority, the district court lacks jurisdiction to say so—only a court of appeals adjudicating a petition for review filed within sixty days of the Commission's decision has authority to declare it unlawful. *See id.*

The Supreme Court, however, will soon decide whether the Hobbs Act has this effect. In *PDR Network, LLC v. Carlton & Harris Chiropractic Inc.*—another TCPA case, this time involving the TCPA's restrictions on faxes—it will consider whether "the Hobbs Act required the district court . . . to accept the FCC's legal interpretation of the Telephone Consumer Protection Act." 138 S. Ct. 478, 478 (2018) (mem.). The case will be argued on March 25, 2019, with a decision expected by the end of June.

## ARGUMENT

Both the Commission's and the Supreme Court's forthcoming decisions will impact this case. Accordingly, it makes sense to stay proceedings pending those decisions rather than continue with class notice and trial in October. This court has already denied Defendant's attempt to get clarification on the FCC and Supreme Court's determination of these key issues in the TCPA.

4

However, the Eleventh Circuit has since granted the appellee-defendant's Motion to Stay proceedings in *Glasser v. Hilton Grand Vacations Co.*, No. 18-14499-JJ (11th Cir. Apr. 24, 2019), *see* **Exhibit 1**, where the sole issue on appeal concerns the definition of an ATDS, pending the Supreme Court's decision in *PDR Network*. Also, at least two other Southern District of Florida District Court judges have also granted stays in this area. *See Buhr v. ADT, Inc.*, No. 9:18-cv-80605-RLR at D.E. 40 (July 25, 2018) (granting stay pending FCC ruling on definition of "ATDS"); *Secure v. Ultimate Fitness Gp., LLC*, No. 18-20483-Civ-Moreno, 2019 U.S. Dist. Lexis 45194 (Mar. 14, 2019) (same), *see* **Exhibit 1**. Accordingly, BCA again renews its request for the court to stay this case pending a clear determination of these issues.

**I.      This Court Should Stay Pending the Commission's Decision**

Under the primary jurisdiction doctrine, a court may "stay[] further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling" on "some issue within the special competence of an administrative agency." *Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000) (quoting *Reiter v. Cooper*, 507 U.S. 258, 268 (1993)). And under a court's own inherent authority to manage its docket, it may stay proceedings in order to conduct its affairs in an orderly, efficient manner. *See, e.g.*, *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1172 n.7 (11th Cir. 2004); *Secure v. Ultimate Fitness Group*, LLC, 2019 WL 1612623 (S.D. Fla, Moreno, March 18, 2019); *Buhr v. ADT, Inc.*, 9:18-cv-80605-ROSENBERG/REINHART (S.D. Fla. 2019, July 25, 2018, DE 40,). Both sources justify a stay pending the Commission's decision here.

As explained, Congress has given the Commission initial authority to interpret the TCPA's prohibitions. *See supra* at 3-4. It is about to set forth its views on one of the central issues in this case. As Defendant's position in this case as similarly situated to the Defendants in *Glasser*, *Secure*, and *Buhr*, demonstrates, this case turns on whether BCA's dialing equipment qualifies as

an "automatic telephone dialing system." But the Commission has twice received comment on "what constitutes an 'automatic telephone dialing system,'" including questions such as "the functions a device must be able to perform to qualify" as an ATDS. 83 Fed. Reg. at 26285; *see also* 2018 WL 4801356, at \*1 (seeking "further comment on what constitutes an 'automatic telephone dialing system'" after the Ninth Circuit's decision in *Marks*). This Court should await its decision before resolving this case.

This Court should also wait for the Commission's decision as a matter of ordinary judicial efficiency. Absent a stay, the parties will have to continue to participate in expensive and time-consuming class notice and litigation matters and the entire defense argued by the BCA as to the issue of whether the Noble Systems dialer is or is not an ATDS that may soon change. If so, the parties would then have to draft—and, again, the Court would have to read—supplemental briefs addressing the impact of the Commission's decision. A stay, however, would allow the Court and the parties to avoid that potentially unnecessary effort.

This short pause would not prejudice the Plaintiff or the class as Plaintiff's expert has not concluded her reverse lookup and the class notice has not yet been issued. Therefore, staying the proceedings and resetting the class notice and trial deadlines would not unduly prejudice either party. Given the fact that several factual issues including class liability will be determined in this trial, the favorable determination of the ATDS definition by the FCC or the Supreme Court in *PDR Network* as well as the applicability to the holding in *ACA International* by the Eleventh Circuit in *Glasser* will have a direct impact on BCA's defense.

The Commission's decision is forthcoming; it has already received public comment on the issue, and everyone expects its decision in the near future. Moreover, that delay will only redound to both parties' benefit.

**II.     This Court Should Also Stay Pending the Supreme Court's Decision in *PDR Network***

This court denied an earlier request by BCA to stay pending the Commission's pending action. Its reason for doing so—that there is no need to wait for the Commission's views because this case turns on "Eleventh Circuit precedent and prior FCC orders not affected by the D.C. Circuit's decision in *ACA International*," *id.* at 2 n.2—does not withstand scrutiny.

The Commission's prior orders were "hardly a model of clarity"; in fact, the only circuit court to apply those orders held that they embodied BCA's reading of the statute—namely, that an ATDS must be able to generate and dial random or sequential numbers, not just automatically dial from a list. *Dominguez v. Yahoo, Inc.*, 629 Fed. App'x 369, 372–73 & n.2 (3d Cir. 2015). But because of confusion about whether the Commission had settled on a dial-from-a-list interpretation, challengers to its prior statements took the steps necessary to challenge those prior statements whether or not they reflected an unambiguous position. Some filed a petition for a declaratory ruling—the mechanism for clarifying ambiguous prior orders. *See* 47 C.F.R. § 1.2(a). Others petitioned for a rulemaking—the mechanism for "challeng[ing] a longstanding regulation on the ground that it is violative of statute." *Biggerstaff v. FCC*, 511 F.3d 178, 184 (D.C. Cir. 2007). When the Commission purported to "provid[e] clarification on the definition of 'autodialer'" and denied the petition for rulemaking in light of that supposed clarification, *2015 TCPA Order*, 30 FCC Rcd. at 8039 & n.552, it thus guaranteed that its prior statements could be reviewed through at least one of these two mechanisms.

The two circuit courts to have addressed this issue agree with BCA's understanding of *ACA International*. In *ACA International* itself, the court rejected the Commission's jurisdictional argument—that the court lacked power to review the agency's understanding of ATDS functionality, since it was settled in prior, unappealed orders—precisely because the petitioners "covered their bases" in the manner discussed above. 885 F.3d at 701. Similarly, the Ninth Circuit

"conclude[d] that," in light of *ACA International*, "the FCC's prior orders on that issue [we]re no longer binding" on it, for the reasons previously given above. 904 F.3d at 1049. Because the district court's denial of a stay turned on its mistaken view that it remained bound by the Commission's prior orders, this Court should take a different course here.

For similar reasons, it also makes sense to stay this litigation pending the Supreme Court's decision in *PDR Networks*. Under *Mais*, the Commission's forthcoming interpretation of the TCPA will be binding on this Court. But if the Supreme Court overrules *Mais*, that will no longer be true. For example, any party who dislikes the Commission's interpretation of the statute will be free to argue under *Chevron v. Natural Resources Defense Council*, 467 U.S. 837 (1984) that the interpretation conflicts with the statute. Again, there is no reason to brief this case under a legal framework that may soon change. And again, a temporary delay pending these two events will not prejudice the Plaintiff but, importantly, the failure to stay the case would severely prejudice the Defendant BCA by continuing to litigate this class action case.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

Pursuant to Local Rule 7.1(a)(3), on June 6, 2019, counsel for Defendant conferred with counsel for Plaintiff, who advised that he OPPOSES Defendant's Motion to Stay.

Dated: **June 18, 2019**.

*/s/ Ernest H. Kohlmyer, III*
Ernest H. Kohlmyer, III
Florida Bar No.: 110108
Email: skohlmyer@shepardfirm.com
Shepard, Smith, Kohlmyer & Hand, P.A.
2300 Maitland Center Parkway, Suite 100
Maitland, Florida 32751
Telephone: (407) 622-1772
Facsimile: (407) 622-1884
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing document has been electronically filed on **June 18, 2019,** via the Clerk of Court's CM/ECF system which will provide electronic notice to the following attorneys of record: Aaron D. Radbil, Esq., Michael L. Greenwald, Esq., James L. Davidson, Esq., Jesse S. Johnson, Esq. and Alexander D. Kruzyk, Esq. of the law firm Greenwald Davidson Radbil, PLLC at *aradbil@gdrlawfirm.com,mgreenwald@gdrlawfirm.com*; *jdavidson@gdrlawfirm.com*, *jjohnson@gdrlawfirm.com* and *akruzyk@gdrlawfirm.com (Attorneys for Plaintiff)*.

*/s/ Ernest H. Kohlmyer, III*
Ernest H. Kohlmyer, III
Florida Bar No.: 110108
skohlmyer@shepardfirm.com
Rachel M. Ortiz
Florida Bar No. 083842
rortiz@shepardfirm.com
Shepard, Smith, Kohlmyer & Hand, P.A.
2300 Maitland Center Parkway, Suite 100
Maitland, Florida 32751
Telephone (407) 622-1772
Facsimile (407) 622-1884
*Attorneys for Defendant,*
*BCA Financial Services, Inc.*